UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIN MARTIN,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 2:14-cv-02214-TLN-KJN<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendant Untied States of America's ("Defendant") Motion for Summary Judgment (ECF No. 11). Plaintiff Darin Martin ("Plaintiff") opposes the motion. (ECF No. 12.) Defendant filed a reply. (ECF No. 16.) Having reviewed the briefing filed by both parties and for the foregoing reasons, the Court hereby DENIES Defendant's Motion for Summary Judgment (ECF No. 11).

**I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

On October 29, 2013, Plaintiff went to the health services clinic at the Federal Correctional Institution at Herlong, California. (Defendant's Statement of Undisputed Facts ("SUF"), ECF No. 11-2 ¶ 1.) Plaintiff complained of skin problems on the fifth toe of his left foot. (SUF ¶ 1.) Plaintiff alleges Ronald Burnett, RN, treated Plaintiff for a plantar wart and applied Verruca Freeze to the affected area. (SUF ¶¶ 1–2.) Plaintiff alleges Burnett misdiagnosed the skin problem as a wart instead of a corn and improperly applied freezing agent.

1

(SUF ¶ 2.) The freezing agent was applied twice and in both instances leaked from the affected area causing burns on all of his toes and the ball of his foot. (Plaintiff's Suppl. Statement of Undisputed Facts, ECF No. 12-1 ¶¶ 8–9.) Plaintiff received treatment for several months to heal the burns. (ECF No. 12-1 ¶ 10.)

Plaintiff submitted an Administrative Tort Claim to the United States Department of Justice Federal Bureau of Prisons on December 3, 2013. (Compl., ECF No. 1 ¶ 4.) The Department of Justice denied his claim on March 25, 2014, and notified Plaintiff that he had six months to commence an action in the appropriate United States District Court. (ECF No. 1 ¶ 4; ECF No. 1, Exh. A at 7.) Plaintiff commenced the instant action on September 24, 2014. (ECF No. 1) The Court issued a scheduling order on March 26, 2015, setting the deadline to designate experts pursuant to Federal Rule of Civil Procedure 26(a)(2) for January 28, 2016. (ECF No. 8.) Plaintiff has not filed or served upon Defendant designations of expert witnesses nor has Plaintiff served disclosures pursuant to Rule 26(a)(2). (SUF ¶ 6.)

Defendants filed the instant motion on April 8, 2016, seeking an order from this court granting summary judgment in its favor because Plaintiff failed to designate expert witnesses as required to establish a professional negligence claim. (ECF No. 11.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party

who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

### III. ANALYSIS

Defendant seeks summary judgment on the ground that Plaintiff has not designated expert witnesses to prove the requisite standard of care and to prove a breach of the standard of care occurred.  (ECF No. 11 at 3.)  Plaintiff argues his complaint alleges a claim for ordinary negligence instead of professional negligence and that ordinary negligence does not require expert testimony to prove the appropriate standard of care or breach of that care.  (ECF No. 12 at 3.)  If the Court finds professional negligence applies then Plaintiff argues the actions of RN Ronald Burnett fell within the common knowledge exception of the requirement for expert testimony.  (ECF No. 12 at 5–8.)

For the purposes of this motion, Defendant does not dispute the diagnosis was improper or the misapplication of the freezing agent.  Defendant focuses solely on the legal question of the necessity of expert testimony.  Furthermore, neither party disputes that if professional negligence applies and the common knowledge exception is not applicable, then Plaintiff's failure to designate an expert makes summary judgment appropriate.  Similarly, the parties acknowledge that if ordinary negligence applies then a triable issue of fact exists and summary judgment is inappropriate.  Accordingly, the Court is tasked with determining whether professional negligence applies and, if so, whether the facts meet the common knowledge exception.

#### A. Professional Negligence

Plaintiff asserts that his claim is one for ordinary negligence and that a professional standard of care is not applicable.  (ECF No. 12 at 3.)  Plaintiff cites *Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal. 4th 992 (1994), as the applicable rule to determine whether an action falls under ordinary or professional negligence standards.  In *Flowers*, the California Supreme Court reviewed an appellate court's decision which denied a motion for summary judgment.  The appellate court found that a sequence of facts in a single cause of action

4

can give rise to both ordinary and professional negligence. *Flowers*, 8 Cal. 4th at 996. The California Supreme Court reversed the decision and held that a given set of facts may not give rise to both professional and ordinary negligence. *Id.* at 997. In so doing, the California Supreme Court explained there is a single claim of negligence which may have different standards of care under different circumstances. *Id.* The court articulated a totality of the circumstances approach to determine the appropriate standard of care. *Id.* The court looked at the risk involved in the acts and surrounding circumstances to determine if a heightened level of care should apply. *Id.* The distinction of professional negligence is significant only insofar as it identifies a special skill or knowledge that may create a relevant circumstance to consider in deciding the standard of care. *Id.* at 1000.

Here, Plaintiff alleges Defendant's employees diagnosed the growth on his foot as a wart and applied Verruca Freeze to the growth resulting in burns to the toes and the ball of his left foot. (ECF No. 12-1 ¶¶ 8–9.) Diagnosing a growth and determining the appropriate treatment to apply is a relevant circumstance which suggests the need for special skill or knowledge. An ordinary layman may not know the difference between a wart, corn or bunion. Additionally, treatments are typically within the purview of medical professionals. Plaintiff argues "any normal non-medical person using the product who simply reads the product label and proceeds 'per the manufactures [sic] instructions,' would know that RN Burnett applied the freeze negligently. (ECF No. 12 at 4.) However, Plaintiff seems to confuse the issues presented to the Court. The Court must first answer what standard of care applies. According to *Flowers*, the Court must look at the risk in consideration of all relevant circumstances. Plaintiff's argument tends to the next question, whether the application of the freezing agent was reasonable under the circumstances and whether an expert is necessary to demonstrate that reasonableness. Based on the circumstances of the application, the diagnosis, and the freezing agent used, the Court finds Plaintiff is, in fact, alleging a claim for professional negligence to which a professional standard of care applies.

        B. <u>Common Knowledge Exception</u>

Plaintiff brings a claim for negligence under the Federal Tort Claims Act. (ECF No. 1.)

In an FTCA action, the Court applies the law of the state in which the alleged tort occurred. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006). Under California law, "[g]enerally, 'negligence' is the failure to exercise the care a reasonable person would exercise under the circumstances. Medical negligence is one type of negligence, to which general negligence principles apply." *Massey v. Mercy Medical Center Redding*, 180 Cal App. 4th 690, 694 (2009) (citations omitted). A nurse is negligent if he or she fails to use the level of skill or knowledge that a reasonable nurse would use in similar circumstances. *Alef v. Alta Bates Hospital*, 5 Cal. App. 4th 208, 215 (1992). The standard of care to be measured in professional negligence actions is a matter soundly within the knowledge of experts. *Landeros v. Flood*, 17 Cal. 3d 399, 410 (1976); *see also Lattimer v. Dickey*, 239 Cal. App. 4th 959, 969 (2015) (applying the requirement of expert testimony to circumstances involving medical malpractice against nurses). However, California courts do not require expert testimony where the alleged medical malpractice lies within the common knowledge of a layperson. *George v. Sonoma Cnty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 948 (N.D. Cal. 2010) (Expert testimony regarding the standard of care was not required on a motion for summary judgment where nurse failed to provide food to inmate prior to discharge). The common knowledge exception is "principally limited to situations in which the plaintiff can invoke the doctrine of *res ispa loquitur*." *Flowers*, 8 Cal. 4th at 1001. The classic example is leaving behind a scalpel in patient's body after surgery. *Id.*

Plaintiff alleges "[b]y not properly diagnosing the skin growth, not taking proper precautions so that the liquid freezing agent did not leak over the non-effected areas, and then after burning Plaintiff re-applying the freezing agent and re-burning him the medical providers at FCI Herlong breached their duty of care to him." (ECF No. 1 ¶ 25.) Plaintiff offers nothing more than unsupported statements in his opposition as proof that a layman would know how to distinguish a wart from a corn and properly diagnosis the growth. Plaintiff argues warts are common ailments and using a freezing agent is a process known to many. (ECF No. 12 at 5.) However, Plaintiff offers no evidence to support this statement. Plaintiff cites cases in support of finding a common knowledge exception. (ECF No. 12 at 6.) However, the cases cited by Plaintiff deal with burns and infections resulting from improper use of medical equipment such as

6

heating pads and needles. *See Timbrall v. Suburban Hospital*, 4 Cal. 2d 68 (1935) (finding common knowledge exception where the patient was burned by application of hot compresses); *Moore v. Steen*, 102 Cal. App. 723 (1929) (finding common knowledge where patient was burned by the use of an X-ray machine); and *Barham v. Widing*, 210 Cal. 206 (1930) (finding common knowledge where the patient sustained an infection from an unsterilized needle). Significantly, these cases do not deal with the diagnosis of an injury. In fact, Plaintiff cites no cases for the proposition that the diagnosis and proper treatment of a growth on a patient — or any ailment — are within the common knowledge of laymen.

Courts have found the diagnosis of an ailment requires expert testimony. *See Hawkins v. United States*, No. 1:04-cv-05771-GMS, 2010 WL 2720956, at *3 (E.D. Cal. July 8, 2010) (finding the diagnosis of a brain tumor required expert testimony). Accordingly, Plaintiff is required to have expert testimony in regards to the possible misdiagnosis. Plaintiff does not dispute that if the common knowledge exception does not apply then expert testimony is required. *See Massey*, 180 Cal App. 4th at 694. Plaintiff has not designated any expert witnesses and it is long past the time to do so. Without expert testimony, Plaintiff cannot demonstrate the appropriate level of care at trial and prove a breach of that duty occurred. Therefore, Plaintiff cannot rely on the alleged misdiagnosis as a means for establishing his negligence claim at trial.

As to the allegation that RN Burnett did not take proper precautions to prevent the freezing agent from leaking onto healthy skin, the Court finds that it is within the common knowledge of the layman. Defendant attempts to characterize the events as misapplying a cryosurgical product. (ECF No. 16 at 4.) However, the classification of Verruca Freeze in medical terms does not alter the product itself and a layman's understanding of the product. The product is a freezing agent of which many over-the-counter variations are sold. It is within the common knowledge to not allow the freezing agent — or any other ointment — to leak onto healthy skin as it could result in damage to the skin. Additionally, the cases cited by Plaintiff demonstrate that negligence on the instant set of facts may be apparent simply from the injury and the burn that occurred. *See Barrett v. JP Morgan Chase Bank*, No. 14cv2976 DMS (WVG), 2016 WL 3523046, at * 4 (S.D. Cal., June 27, 2016) (finding that *res ipsa loquitur* applies in the above

cited cases because negligence is apparent from the alleged damage). Here, Plaintiff has presented evidence that documents the existence of the burns and how the burns occurred. (*See* ECF No. 12-2.) Accordingly, a reasonable fact finder could find that the burns give rise to a claim of negligence and expert testimony is not necessary.

As demonstrated on the instant set of facts, during the course of treatment more than one choice may be made in how to approach a patient's ailment. Even when one decision does not amount to negligence other decisions may. In a claim for negligence "[t]he number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong." *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 321 (1927). Accordingly, so long as one decision regarding Plaintiff's treatment rises to a level of negligent behavior resulting in a single harm Plaintiff can still maintain a cause of action for negligence. Here, the alleged misdiagnosis of Plaintiff's toe growth may have been negligent, but as the Court explained above it requires exert testimony to prove. Plaintiff has not designated or provided the Court with any expert designations. Accordingly, Plaintiffs claim for negligence may not rely on the alleged misdiagnosis.

However, even if Plaintiff cannot demonstrate negligence based on a misdiagnosis, Plaintiff can still prove negligence on the next step in the sequence — the alleged failure to take precautions to protect Plaintiff during the application of the freezing agent. Considered in isolation, the failure to take precautions can constitute a breach of the standard of care and can maintain a claim for negligence. *Baltimore Steamship*, 274 U.S. at 321. The Court found above the failure to protect against leaked freezing agent falls within the common knowledge exception and can be proved without expert testimony. Accordingly, Defendant's Motion for Summary Judgment is denied.

**IV.     Conclusion**

For the above mentioned reasons, Defendant's Motion for Summary Judgment (ECF No. 11) is hereby DENIED, but Plaintiff is precluded from relying on the diagnosis of his growth at trial because he lacks expert testimony on the issue. The parties are hereby ordered to file a Joint

Status Report within thirty (30) days of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

Dated: July 5, 2017

Troy L. Nunley
United States District Judge